# HOUSING AND COMMUNITY DEVELOPMENT AMENDMENTS OF 1979

## HEARINGS

BEFORE THE

## SUBCOMMITTEE ON HOUSING AND COMMUNITY DEVELOPMENT

OF THE

## COMMITTEE ON BANKING, FINANCE AND URBAN AFFAIRS HOUSE OF REPRESENTATIVES

NINETY-SIXTH CONGRESS

FIRST SESSION

**PART 2**

MARCH 26, 27, 28, 29, 30; AND APRIL 10, 1979

**Serial 96–11**

Printed for the use of the
Committee on Banking, Finance and Urban Affairs

U.S. GOVERNMENT PRINTING OFFICE
44-243 O WASHINGTON : 1979

PHOTOGRAPH TAKEN 12/21/78
FIRST AVENUE N. FROM FIFTH STREET
OILSR NO. 2-695-09-29 ON-SITE EXEMPTION

Comments on the Ashley Bill - HR 3598

We have had the opportunity to make an initial review of the Ashley bill and it appears to HUD that there are many provisions which would be beneficial to the Land Sales Act and ultimately the land buying public.

New Exemptions

It appears that some of the legislative changes would enact as statutory provisions counterparts of certain of the new regulatory exemptions. In particular, I am referring to the scattered site exemption (proposed section 1403(b)(3)) and the "less than 12 lots per calendar year" exemption (proposed section 1403(b)(2)).

The legislation also would change the current 50 lot jurisdictional threshold to a 100 lot exemption. Although developers of some small subdivisions can and do produce a volume of complaints, the Department believes that the exemption approach in this bill is appropriate. It relieves the small developer of the registration burden but at the same time makes a developer liable under the misrepresentation and fraud provisions. Thus, purchasers would still be able to bring an action against a fraudulent developer. This provision would eliminate the need to register for approximately 50% of the unregistered subdivisions we found in a 3-year period. The Department has proposed this approach before and supports it as included in the proposed bill as a simple, direct way of giving relief to small developers.

We also support the deletion of the no liens/on site exemption. As our report to Congress pointed out, the exemption was difficult for developers to use and did not adequately protect purchasers.

The Ashley bill would amend the "improved homesite" exemption which was enacted by Congress in the last session. OILSR welcomes this initiative to clarify the wording of that provision. However, we are concerned about the lessening of the protections for purchasers, maintenance of road facilities and the modifications allowing an increased use of promotional devices that have been the source of abuse in the past.

Prohibition

The Ashley bill would make changes in the section of the Act which prohibits fraud and fraudulent activities in land sales, section 1404(b). HUD believes that these changes are appropriate and supports them. In particular, the inclusion of liability for omissions of material facts, and the prohibition of the use of promotional material which is inconsistent with information in the property report. These proposed provisions will clarify the existing law and bring it more in line with the existing securities laws. HUD also supports the provision in section 1404(2) requiring that the contract must provide for a reasonable time for completion of represented roads,

mption

n.
hat

ilities
onal

land
re
on
bition
th
ons
h
ion

sewer, water or electrical service, if they are represented to be provided by the developer. Purchasers' most frequent complaints concern failure to complete facilities in a timely fashion. Since most land sales contracts fail to provide a date for facilities completion, purchasers are often left without a remedy against developers who constantly defer completion of facilities. This provision will provide purchasers with direct and clear contractual rights.

Statute of Limitations and Revocation Rights

The next major provisions which deserve comment relate to statutes of limitation and revocation rights. The Ashley bill as proposed would provide for a two-year right of recision if a contract fails to provide for certain basic purchaser rights. HUD believes that this approach will result in substantial benefits to the consumers. Moreover, it is our opinion, that the requirements to avoid the two year revocation period can be easily met by developers. Some change in the provision may be advisable regarding the exact wording, but this matter could be discussed in detail with the staff. The proposed extension of the statute of limitations is strongly supported by the Department. We have proposed comparable legislative amendments in the past. The Department constantly receives inquiries and complaints from individuals who have purchased under long term installment contracts and who were unable to discover misrepresentations until several years after

signing contracts because the time for performance does not occur until then. The time periods in the proposed legislation will remedy this problem.

State Certification

The proposed legislation contains a provision for certification of state land sales regulatory laws which provides for the acceptance of state-required disclosure materials in states which meet certain standards. We believe this movement toward state certification would be more, not less, burdensome to developers. Developers would have to go through several registration processes if they wanted to sell in more than one state. Moreover, after the developers became registered with each of the states, they presumably would have to send certified copies of their filings to HUD. It is far more economical to handle disclosure once at the Federal level. We have been advised by one industry representative that the economics of state certification procedures would tend to discriminate against small developers and thereby reduce competition for the larger ones. Smaller developers simply may not be able to afford to register themselves in many states.

The trend is for states to look to the Federal Government to handle the disclosure burden. More than 20 states already accept the HUD Property Report as their disclosure document.

One of the states with strong disclosure requirements is Florida. We have held lengthy discussions with representatives of that state who are interested in being relieved of the disclosure function so that the state's resources can be devoted to completion assurances, other substantive requirements and to enforcement--exactly the approach which we believe will be most successful. Cooperative enforcement efforts between HUD and Florida's Division of Land Sales and Condominiums already have been experimented with and proven highly successful.

The current Federal law is adequate to permit acceptance of disclosure documents from those few states whose disclosure standards measure up to the Federal standards.

We do accept filings from the State of California. In fact, we have a reciprocal arrangement. The state agency also has agreed to accept the HUD Property Report as the State's disclosure document. California has very stringent subdivision requirements and a staff which approaches the size of our own. We think that the California Public Report is a very good disclosure document, but among the other states that accept our Property Report, there has not been a similar acceptance. Based upon our experience, a state which otherwise was agreeable

to disclosure reciprocity with us would be unwilling to accept another state's disclosure document. None of them do so now. We have posed this question to California informally and received a negative response, confirming our sense that state certification will not simplify things for the industry.

We would favor a provision in the proposed legislation like that in the Williams bill which would make the HUD Property Report the only disclosure document to be used in uncertified states, for this minimizes some of the duplication problems discussed previously. It would be beneficial to purchasers because it would eliminate the confusion which results when they are given several different documents, as presently occurs in some states. Likewise if certification is enacted we would strongly recommend the inclusion of a requirement that one certified state accept another certified state's disclosure document.

Administrative Sanctions

Finally, we are pleased by the addition of new administrative authorities in the proposed Ashley bill. The Department currently has no administrative enforcement powers which would be useful in combatting fraud and obtaining registration compliance. If HUD is unable to obtain voluntary compliance with either the initial registration requirements or

anti-fraud provisions of the statute, it must seek an injunction or bring criminal charges through an already strained and overburdened court system. In the case of criminal charges, it is often difficult to persuade a U.S. Attorney to bring a criminal case for a white collar crime. The injunctive authority often is ineffective and cumbersome, requiring dealing with the Department of Justice and waiting for cases to be processed through the court system, during which time the violations of fraud and their harmful effects continue. Quick and effective administrative action through cease and desist authority is needed to halt harmful activity, subject of course to a developer's due process right to a timely and impartial hearing.

The Ashley bill restricts the use of civil penalties to only violations on a cease and desist order. The Department often confronts the problem of registered or unregistered developers who fail to make proper disclosure until they are pursued through administrative and judicial proceedings or developers that commit fraud and only stop when caught. The authority to levy civil penalties in such cases would present an alternative sanction, greatly increasing the Department's flexibility in dealing quickly with such violations and we support a provision such as the one in the Williams bill. This form of remedy was specifically recommended by the Administrative Conference of the United States as a sanction

44-243 (Pt. 2) O - 79 - 18

for federal administrative agencies and 26 other Departments or independent agencies already possess such authority vested by Congress in 338 statutory civil penalty provisions.

In summation with regard to the draft legislation, we generally support the proposed legislative changes and believe that they will strengthen the statute and correct certain existing deficiencies.

<u>The Proposed AuCoin Bill</u>

I would also like to add a few comments with regard to the other legislative proposal which is to be introduced, by Congressman AuCoin. This bill appears to attempt to correct deficiencies in the recently enacted "improved homesite" exemption, provide relief for small developers and modify the statute of limitations. We believe that the revisions proposed in the draft Ashley and Williams bills are preferred to those found in this proposal.

We strongly oppose the additional "intrastate" exemption provisions in the AuCoin bill. It is too broad and poses technical problems. The exemption for sales that are "intrastate in nature" is vague and will present interpretation difficulties. Compounding the vagueness problem, is the introduction of the requirement that the lot be "free and clear of all liens, encumbrances and adverse claims." As we pointed out in our report to Congress, the free and clear of liens"

language presently in the Act has been a continuing problem for the Department and developers. For example, are bridle paths or easements for maintenance of canals the type of easement commonly conveyed to a public utility or beneficial restrictions and thus falling within the exception language of the Nelson Bill? Because of the necessity of technical interpretations and the lack of consumer protection, both the Ashley and the Williams bills recommend delection of the existing "free and clear of liens" exemption. Yet the AuCoin bill proposes this complex language in a self-determining exemption that exposes the developer to recisions and liabilities if he makes an incorrect interpretation.

In addition, an indefinite and broadly-stated intrastate exemption carries gross inequities. The states vary tremendously in size, and within many of them, the internal geography varies considerably. Only a handful of states are prepared and willing to assume any disclosure responsibility if the Federal government discontinues its involvement. With a few exceptions the states do not have the financial ability or the staff to assume the disclosure responsibilities presently handled by HUD. What the Congress must consider carefully is whether it wants to

The proposed exemption would open a floodgate to potential abuse. A 100-mile radius provision in many places includes a multi-state geography which will not render administrative relief for the small businessman, nor provide the necessary protection to land purchasers.

Conclusion

We believe that the improved-homesite exemption, the proposed 100-lot exemption as proposed by Congressman Ashley and Senator Williams, and the seven newly-promulgated self-determining regulatory exemptions will better serve the interests of purchasers and small developers. In particular, I would call your attention to the "local offering exemption" which, like the improved-homesite exemption, will eliminate registration requirements for small developers who qualify. Purchasers in these subdivisions will be from the local areas familiar with the characteristics of the area and, presumably, with local development requirements or potential problems. This exemption could still qualify subdivisions on state borders. However, subdivisions with thousands of lots will not qualify, nor will subdivisions promoted over wide geographical areas.

We believe that the regulatory exemptions and the statutory 100 lot exemption apprach are a positive way of meeting the problems of small developers without leaving numerous citizens without the protections of full disclosure.

Chairman
brevity and
Your recei
the onsite in
study found?
Ms. WORT
We had re
onsite inspec
tion, that of
40 percent o
We think
difficult for d
that actually
divisions had
subdivisions
percent of th
46 percent o
individual sy
We are co
indicated ear
exemption.
Chairman
current Fede
documents fr
up to Federal

California ha
proaches the si
very good disc
property report
Based upon
closure reciproc
document.

Now, getti
Federal law is
from those f
closure stand
it, that even
must be forth
In other w
list of additi
California.
So, what y
excellent Stat
State to do.
they have p
requirements
Try to help
Ms. WORTH
As I indica
are really quit
The proble
the Federal s