# HOUSING AND COMMUNITY DEVELOPMENT AMENDMENTS OF 1979

## HEARINGS

BEFORE THE

## SUBCOMMITTEE ON HOUSING AND COMMUNITY DEVELOPMENT

OF THE

## COMMITTEE ON BANKING, FINANCE AND URBAN AFFAIRS HOUSE OF REPRESENTATIVES

NINETY-SIXTH CONGRESS

FIRST SESSION

PART 2

MARCH 26, 27, 28, 29, 30; AND APRIL 10, 1979

**Serial 96–11**

Printed for the use of the
Committee on Banking, Finance and Urban Affairs

U.S. GOVERNMENT PRINTING OFFICE
44-243 O WASHINGTON : 1979

April 26, 1979

Honorable Thomas L. Ashley
Chairman, Subcommittee on Housing
    and Community Development
House of Representatives
Room 2129 RHOB
Washington, D.C. 20515

Dear Mr. Chairman:

    At the hearing on April 10 before your Subcommittee, the National Association of Realtors® requested and was granted additional time in which to submit this Association's position on HR 3598, a bill to amend the Interstate Land Sales Full Disclosure Act. This letter presents the views of this Association on that matter. We respectfully request that the letter be included in the printed volume of the hearing on April 10.

DEFINITIONS

    Section 1 of HR 3598 would set out the definition of "subdivision" and "common promotional plan" in two subsections rather than the present one. The bill, however, does not make any changes in the definitions.

    The term "common promotional plan" has caused considerable problems for small developers. The present ambiguity of the term has allowed HUD to use the barest of threads to weave a definition of commonality to bring small developers within the Act.

    As an example, small developers selling individual, non-contiguous lots beyond the numerical threshold of the Act have been brought under the ILSFDA. This result has come about despite the fact that a developer can be selling lots, that is small parcels of land miles apart from each other rather than parts of a subdivision. The means by which HUD has brought this about has been the definition of "common promotional plan". In the case of a sole proprietor, the fact that he personally sells his lots has brought him under the Act because he is deemed to be utilizing a "common sales force". In effect the Act's operation seems to be penalizing the small businessman because he is small, and the smallest of businessmen, a sole proprietor, is the hardest hit by the application of the "common promotional plan".

    We believe a more rational approach would be to amend the definition of "common promotional plan" to count lots as part of a single subdivision only if the lots are contiguous or known by a common name. This would at least give relief to the sole proprietor in excluding the factor of the common sales force. In the alternative, if the Subcommittee feels that this may not be a flexible approach to this problem,

the definition can be written in terms of providing a presumption that no "common promotional plan" is present if the lots are not contiguous and are not known by a common name. HUD would then be free to try to prove by other evidence, that different lots are indeed marketed as if they were part of a single subdivision.

EXEMPTIONS

Section 2 of the bill attempts to solve some of the current problems caused by the definition of "common promotional plan" in its exemptive proposals. We believe that the proposed exemptions in the bill would certainly make the Act more rational. Unfortunately, the proposed exemptions stop short of giving much substantive relief to the small developer,

The redefinition of the threshold jurisdiction at 100 lots "not otherwise exempt under this section" is most helpful. This would solve the problems of instances when HUD has been known to aggregate the number of fully developed lots with houses on them and one undeveloped lot which together exceed fifty units to force the developer to register the single lot.

Similarly, the exemption of developers who sell less than 12 lots per year will be helpful to some small developers. However, we believe this exemption would be more helpful, if it allowed up to 12 sales of lots not otherwise exempt under this section if not more than 12 lots not otherwise exempt have been sold or leased from that subdivision in any previous calendar year. This would retain the distinction found in the first exemption -- that the Act is not concerned with fully developed lots or sales of undeveloped lots.

As an example, the de minimus annual sale exemption as currently drafted, would not be available to a person who may have sold 20 lots on which there are residential buildings on 1978 and proposes to sell in the same subdivision 10 unimproved lots in 1979. While the bill wants to foreclose the possibility of a developer using this exemption to sell a large number of undeveloped lots, without registration, we believe that selling developed lots would not worsen this concern but would make this exemption more meaningful.

The third exemption would allow the sale of each non-contiguous part of the subdivision if the part does not contain more than 10 lots. This exemption primarily attempts to alleviate the problems caused by the definition of "common promotional plan", discussed above. In effect, this exemption states that no "common promotional plan" is deemed to exist if the number of lots in each non-contiguous section is less than 10 despite the fact that these lots are known by a common name, promoted by common advertising or sold by a common sales force.

Again, we believe this exemption is also helpful, but we do not believe it goes far enough from relieving the small developer from the paperwork burden. Should the ILSFDA be concerned with 15 lot or 20 lot subdivisions? We do not believe so. The Federal government should concentrate its efforts which have an impact on interstate commerce.

As a result, we believe that to substitute a limit of 50 or 75 lots for the 10 lots currently found in this section would be far more practical and materially helpful. If this liberalization in the number of lots is deemed appropriate, further limitation could be placed on its use to prevent the sale of a large number of lots without registration. One possible addition could be the requirement that the non-contiguous parts also not be known by a common name. This would allow the small developer to sell small groups of lots in non-contiguous sites under an exemption from the Act while further foreclosing the opportunity to a developer who wants to sell a large number of lots, promoted under a common name, without registration.

The above discussed exemptions would apply to both interstate and intrastate sales of lots. They recognize that the Federal government should concentrate its efforts on transactions which have more than a minimal effect. These de minimus exemptions are consistent with other Federal laws which provide exemptions despite the interstate nature of small transactions.

While the bill does recognize the threshold interest of the Federal government in interstate land sales, the major shortcoming of the bill is its failure to recognize the shared Federal-state responsibility in the regulation of commerce and in the protections of consumers. This shared responsibility, recognized in other laws, has traditionally reserved for state regulation those transactions which do not go beyond the boundaries of a state or only have a local impact. A primary example of this Federal-state sharing of responsibility is the Securities Act of 1933 which was the model for the ILSFDA. Not only does the Securities Act allow de minimus exemptions of interstate transactions, as does HR 3598, but it also gives an exemption under Section 3 (a)(11) for securities "sold only to persons resident within a single State . . . where the issuer . . . is . . . doing business . . . within such State".

Such a regulatory framework applies the Federal presence where it is needed the most. The Federal presence is needed in the interstate context because uniformity is required where a transaction transcends the jurisdiction of several states and the states may not be able to deal with such a transaction in a uniform manner; and the Federal courts are required to be able to obtain jurisdiction over persons resident in the several states. These requirements are not present, however, when a transaction is purely intrastate. In such instances the required uniformity is present and the state courts are able to obtain jurisdiction over all parties involved.

While HR 3598 goes only part-way in ameliorating the regulatory problems with the ILSFDA, the crucial ingredient necessary to focus the Federal effort to where it is needed most is provided by HR 3462. The latter bill, introduced by Congressman AuCoin, exempts transactions which are intrastate and thus establishes the traditional Federal-state framework of regulation found in most disclosure laws similar to the ILSFDA, particularly the Securities Act of 1933. Consequently, it is our recommendation that the exemptive provisions of HR 3598 be combined with those in HR 3462 in order to provide a rational mode of regulating land sales in this country.

Section 2 of the bill also contains several amendments designed to perfect the homesite amendment added to the Act last year. This Association supports the perfecting amendments contained in both HR 3462 and HR 3598. We would like to suggest, however, that Section 1403(b)(5)(B)(i) which requires as a condition for the exemption that "the lot is situated on a paved street or public highway . . . and is acceptable to such unit . . ." (emphasis added) precludes use of the homesite exemption in many political subdivisions. For example, counties in the states of North Carolina, Arkansas, Missouri and others do not accept the dedication of paved streets or highways simply because those counties do not have the revenues or equipment to maintain paved streets or highways.

In addition, this requirement discriminates against consumers who may prefer to live in more remote or rural areas that do not necessarily conform to the same standards found in urban land development. It seems to us that so long as streets or highways of ingress and egress in a subdivision meet all other criteria of the proposed subsection, the exemption should apply. Accordingly, we recommend that the word paved be removed as one of the prerequisites for this exemption.

REQUIREMENTS RELATING TO SALES

When we testified before this Subcommittee last year we stated that we would cooperate with the Subcommittee in providing added protection to purchasers of lots sold interstate when such added protection was deemed necessary and appropriate. We note that HR 3598 proposes additional consumer protection under this Section of the bill. The National Association of Realtors® supports the objectives of this section of the bill concerning the coverage of omission to state a material fact, prohibition of inconsistent information in advertising and protection of installment contract purchasers. We have, however, certain reservations with respect to the specific language of the bill. We offer below suggested modifications which we feel would improve the operation of these provisions.

The amendments to Section 1404 of the Act proposed in Section 3 of the bill would establish two antifraud sections -- one for properties registered with HUD and one for all properties not exempt under 1403(a), as proposed by the bill. The major addition to the antifraud provision would give rise to a cause of action for the omission to state a material fact necessary in order to make the statements made not misleading.

The National Association supports this change. However, we believe that it is important to point out in legislative history that the applicable course of conduct giving rise to a cause of action is not based in negligence but on an intentional act or wanton and willful conduct. The courts had a great deal of controversy in construing a similar provision under the Securities Exchange Act of 1934. The U.S. Supreme Court, however, in <u>Ernst & Ernst v. Hochfelder</u> finally settled that dispute by requiring intentional conduct as opposed to negligence. Such a clarification would avoid similar protracted litigation under this Section and render it consistent with the past Supreme Court decision.

The bill also provides a cause of action for information in advertising which <u>is inconsistent</u> with the information contained in the property report. We feel that this provision is somewhat ambiguous and should be corrected in the following manner. First, we read this section to mean that the developer can not include information in its advertising which is not covered in the property report rather than requiring the developer to include all information required to be in the property report in its advertising. As is obvious, the latter interpretation would eliminate all advertising in this area and this would adversely affect the consumer.

Second, the cause of action granted under this Section should only be available if the inconsistent information is "material". This change would make this section consistent with 1404(a)(1)(A),(B) and (C) and eliminate the potential of frivolous suits. Finally, it should be made clear in the legislative history that this section on advertising in no manner authorizes HUD to promulgate rules on the nature or content of advertising or the submission of advertising to HUD for clearance prior to publication. If the above clarifications are made, the National Association of Realtors® would support the inclusion of this provision in the Act.

We are concerned with the provisions of the bill which would extend the rescission period from 72 hours to 21 days. We do not agree that the rescission period in existing law needs changing. To extend seven-fold the time period in existing law appears totally inappropriate and unreasonable. This extension, we believe, will merely serve as an excuse for procrastination or delay of a decision which can be made in a shorter period of time. Those states which have enacted longer rescission periods than the Federal law do not come close to providing as lengthy a period as 21 days.

We also urge the Subcommittee not to extend from one year to two years the period in which a consumer may rescind the transaction for failure to receive a property report. We believe that one year is a sufficient amount of time for the consumer to

determine his or her rights. The one year requirement is also found in the Securities Act of 1933 for the failure to deliver a prospectus and has been found appropriate during the 45 year history of that Act.

The National Association of Realtors® supports the aim of the bill in granting consumers who purchase lots with installment sales contracts, some of the same provisions found in transfer by deed. We generally agree that such consumers should be allowed to recover the equity they have built up and be given notice and recourse in case of default.

However, we have several concerns with respect to the specific language of this section. Subsection (2) of proposed section 1404 (d)(2) provides that the purchaser must be given 30 days to remedy a breach. Instances may arise where the consumer may breach and the consumer may request the developer to refund the amount required under subsection (3) to the consumer before the thirty days expire. In addition, a sales contract may have a due and payable clause on the amount due in cases where a consumer wishes to sell his property to another. Finally, a situation may arise where the consumer has filed for bankruptcy and the developer wishes to file as a creditor before thirty days. We believe that the language of subsection (2) may not allow for flexibility in proceeding in the three examples outlined above even though these would not be instances in which the bill seeks to protect consumers. Finally, we believe that the bill should make clear that the developer is entitled to offset against the amount to be refunded to the purchaser attorney's fees and costs of the developer resulting from the breach.

CERTIFICATION OF SUBSTANTIALLY EQUIVALENT STATE LAW

While we support the thrust of Section 4, we believe that a further subsection should be added with respect to denial of certification. This section would provide that if after request for certification and denial by the Secretary, the Secretary shall inform the state in writing regarding the specific changes required in the State's laws and regulations in order to receive certification.

LIMITATION OF ACTIONS

We believe that proposed section 1412(b) contains several errors. Although this section states that no action shall be maintained with respect to subsection 1404(c) and (d) unless brought within three years, those subsections only provide for action within two years. Furthermore, as stated earlier, we believe that the appropriate statute of limitation for subsection 1404(b), (c) and (d) should be within one year of the signing of the contract since it is fairly easy to ascertain violations. This is particularly true for subsection (b) which provide for rescission of the contract, currently, within 72 hours of signing.

CEASE-AND-DESIST ORDERS

The National Association of Realtors® objects to the provision of HR 3598 which would establish a system to adjudicate violations of the Act in an administrative forum. Our objection is based upon the fact that HUD has currently sufficient powers to seek enforcement of the Act in court and that establishment of a redundant, parallel system of adjudication is unnecessary.

The statutory authority given HUD under section 1415 of the Act is identical to the powers given the Securities and Exchange Commission to prosecute securities law violations. We believe that it is a matter of public record that the SEC has done a good job in using those powers in enforcing the acts within its jurisdiction.

The sole difference, and the fact which leads HUD to ask for this new procedure, concerns an Administration policy. While the SEC as an independent agency may bring

its own cases in cou
(and past Administrat
on behalf of all exe
policy that HUD is a
judges. It is clear
court access that ju
Act would be suffici
then not with the Ac
other factors, to pr

We believe that
suits. Not only is
witnesses but it is
than to establish a
administrative prose
administration polic
to the effective use
is in effect right n
impediment rather th
of Realtors® would s
prosecute violators

This Associatio
when it may be appro
the bill's provision
exercise of such pow
when there is not su

While we oppose
granting of such pow

(1) The devel
there is

(2) There is
dissipate

(3) There is
an order,
irreparab

The cease-and-desist
injunction, for exam

We believe that
rights of the develo
would require the de
authority. It shoul
should not be tamper
proposal recognizes

CRIMINAL PENALTIES

We believe that
be revised. Current
The bill would alter
more than seven year
retained. Furthermo
that the judge presi

its own cases in court, HUD is constrained from doing so because this Administration (and past Administrations) have required that the Department of Justice prosecute cases on behalf of all executive branch departments. It is to circumvent this Administration policy that HUD is asking for the establishment of this new network of administrative judges. It is clear that the Act as it is written provides sufficient authority and court access that judges have been able to hear and decide these cases and that the Act would be sufficient if HUD could only sue on its own behalf. HUD's gravamen is then not with the Act but with the inability of Justice, due to Justice's workload or other factors, to prosecute as many cases as HUD would like.

We believe that the judicial process is the appropriate forum to bring such suits. Not only is such a forum fairer and more convenient for the parties and witnesses but it is inherently more economical to use that existing system rather than to establish a costly new bureaucracy of administrative law judges, law clerks, administrative prosecutors and support personnel. We believe that other than an administration policy of having Justice bring these suits, there is no impediment to the effective use of the courts to prosecute violations of the Act, as the Act is in effect right now. Thus, we would urge that legislation be used to remove this impediment rather than establishing a costly new alternative. The National Association of Realtors® would support such an effort to allow HUD to use its own lawyers to prosecute violators of the ILSFDA.

This Association agrees with the thrust of HR 3598 that there may be instances when it may be appropriate for the Secretary to have cease-and-desist powers. However, the bill's provision for providing these powers is overly broad. We would support the exercise of such powers when a developer threatens to irreparably harm purchasers <u>and</u> when there is not sufficient time to seek a court injunction.

While we oppose the cease-and desist section as drafted, we would support the granting of such powers if the following conditions are met:

(1) The developer has engaged in violations of the Act and there is a substantial likelihood of future violations:

(2) There is a substantial likelihood that the developer may dissipate the assets of the property owners; and

(3) There is a substantial likelihood in the absence of such an order, the rights of the property owners will be irreparably harmed.

The cease-and-desist order would be effective while the Secretary sought a court injunction, for example, for no more than three days, and would not be renewable.

We believe that this approach would balance the rights of the purchaser and the rights of the developer. It would also avoid the infirmity found in the bill which would require the developer to prove his innocence once the Secretary invokes this authority. It should be obvious to all that a person's Constitutional right of innocence should not be tampered with in all but the gravest circumstances. We believe that our proposal recognizes this principle.

<u>CRIMINAL PENALTIES</u>

We believe that the portion of Section 8 of this bill regarding imprisonment should be revised. Currently, the Act provides for imprisonment of not more than five years. The bill would alter this by providing for imprisonment of not less than one year nor more than seven years. We believe that the maximum sentence in the Act should be retained. Furthermore, we urge the elimination of the minimum sentence. We believe that the judge presiding over the trial should retain discretion to sentence violators

to prison for less than one year if the circumstances warrant such a sentence.

PARENS PATRIAE

While parens patriae may be a desirable concept in certain circumstances, the addition of these powers, to the long list of other provisions contained in the bill, puts the small developer at a decided disadvantage in defending himself against charges of wrongdoing. In addition to the prescence of general policy factors, this section contains specific provisions which make it ill-advised.

The primary reason for oppostion to the parens patriae section is the disadvantageous position it places small developer-defendants. Assuming that the other sections of HR 3598 are enacted, a potential defendant faces the possibility of four proceedings; administrative suit by HUD, criminal suit by Justice, civil suit by purchaser and a parens patriae suit by the state attorney general. If the developer chooses to litigate in each one of these cases and wins, the developer will still have to pay the attorney's fees and costs for four different proceedings. In light of this and the fact that in three of the four possible proceedings, the potential defendant will be pitted against the substantial resources of the government, it will not be unusual for the small developer to be forced to cave in despite his perceived innocence or the merits of the case.

Consequently, while the parens patriae section attempts to limit multiple recovery of damages, it does not address the cost of multiple expenses for defending several suits. Furthermore, there is no provision in this section that states that if the Federal government has sued and the judge has found for the defendant that such a finding shall be res judicata with respect to the suit of the state attorney general. We believe that the absence of such a provision makes this section unconscionably biased against potential defendants.

This section would also provide for an unfortunate practice of relieving the plaintiff from his burden of proving actual damages. It is an old-established principle of American jurisprudence that each plaintiff prove his or her actual damages in a civil suit. This section would replace this principle with the practice of showing damages in the "aggregate by statistical or sampling method". The ill-advised nature of such a proposal was amply demonstrated by the members of the House of Representatives in defeating the Federal Trade Commission Act Amendments, which contained a similar provision, during the 95th Congress.

The parens patriae section of HR 3598 contains a provision in proposed Section 1421(d) which would allow suits for "any violation of section 1404 or any violation of other Federal law if such violation is also a violation of section 1404" (emphasis added). The effect of the underlined words would be to allow parens patriae suits for not only violations of the ILSFDA but also of the applicable securities laws and laws administered by the Federal Trade Commission. This would be an important and radical departure indeed in the enforcement of these other laws and should not be undertaken without a major, thorough study of the issues.

Finally, we believe that proposed section 1421(g) removes any sense of responsibility from state officials who are seemingly authorized to administer this section. What this subsection does is allow for the potential that any attorney in the state can bring a suit under this section. The only restriction would be those limited cases which could not be brought with pure contingent fee retainer contracts. If this section is enacted at all, these broad powers should not be granted to attorneys whole sole motivation in bringing these cases may be one of profit. To do so under the thinly veiled guise of stating that state attorneys general can prosecute under this section does not fairly disclose the mischief which can be wrought under this section.

We appreciate this opportunity to present this Association's views on HR 3598.

Sincerely,

Albert E. Abrahams
Senior Vice President