

48 FR 44412-01, 1983 WL 113457 (F.R.)

PROPOSED RULES

DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

24 CFR Parts 1710 and 1720

[Docket No. N-83-1286]

Guidelines for Exemptions Available Under the **Interstate Land Sales Full Disclosure Act**

Wednesday, September 28, 1983

**\*44412** AGENCY: Office of Housing—Federal Housing Commissioner, HUD.

ACTION: Notice of Proposed Guidelines (Interpretive Rule).

SUMMARY: These Guidelines are intended to provide information concerning the requirements for statutory and regulatory exemptions which are available to developers and are contained in the rules and regulations (24 CFR 1710.5 through **\*44413** 1710.18) issued pursuant to the Interstate Land Sale Full Disclosure Act, 15 U.SC. 1701, et seq. The Guidelines contain agency positions, interpretations and descriptions of the individual elements of eligibility criteria for each exemption. The underlying purpose of the Guidelines is to assist developers in identifying eligibility for all self-determined exemptions and to provide guidance in those cases where the submission of material to HUD is required.

DATE: Comments must be received by November 28, 1983.

ADDRESS: Interested persons should submit comments to the Rules Docket Clerk, Office of General Counsel, Room, 10278, Department of Housing and Urban Development, 451 Seventh Street, SW., Washington, D.C. 20410. The comment should state the above docket number, the name and address of the commenter and give reasons for any recommendations. Copies of all written comments received will be available for examination and copying in the Office of Rules Docket Clerk.

FOR FURTHER INFORMATION CONTRACT: Roger G. Henderson, Director, Program Development and Control Division, Office of Interstate Land Sales Registration, Department of Housing and Urban Development, 451 Seventh Street, SW., Washington D.C. 20410, (202) 755–5618.

SUPPLEMENTARY INFORMATION: Since April 23, 1979, when the Department last issued Exemption Guidelines (44 FR 24010), the Department has issued numerous opinions and orders on various exemptions. These Guidelines incorporate those interpretations and agency policies into one document.

In addition, new self-determining exemptions were enacted by the Congress in 1979 and reflected in substantive regulations since the last guidelines were published. These Guidelines will assist the public in understanding these exemptions.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

The Exemption Guidelines do not change any of the provisions of the published regulations. The Guidelines exist to provide guidance to the public on what constitutes eligibility for exemption, what to do if eligibility exists and what to do if there are questions as to eligibility.

Except to extent that these guidelines are directly related to proposed changes in 24 CFR Part 1710 which are published elsewhere in this edition of the Federal Register, the interpretations herein are in fact currently being applied by the Department. However, public comment is invited and the Notice of effectiveness of the Guidelines will include an examination and discussion of any comments received.

When these guidelines become final, they will be published in the Code of Federal Regulations as an Appendix to Part 1710.

A Finding of No Significant Impact with respect to the environment has been made in accordance with HUD regulations in 24 CFR Part 50 that implement section 102(2)(C) of the National Environmental Policy Act of 1969. The Finding of No Significant Impact is available for public inspection during regular business hours in the Office of the Rules Docket Clerk at 451 Seventh Street, S.W., Room 10276, Washington, D.C. 20410.

Accordingly, the Exemption Guidelines are published as follows:

Guidelines for Exemptions Available Under the Interstate Land Sale full Disclosure Act

*Table of Contents*

Part I—Introduction

Part II—Definitions

(a) Anti-Fraud Provisions

(b) Common Promotional Plan

(c) Delivery of Deed.

(d) Lot

(e) Sale

(f) Subdivision

(g) Site

Part III—Exclusions from the Act

Part IV—Statutory Exemptions from the Title Requiring No Determination by HUD

(a) Twenty-Five Lots

(b) Improved Lots

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

(c) Evidences of Indebtedness

(d) Securities

(e) Government Sales

(f) Cemetery Lots

(g) Sales to Builders

(h) Industrial or Commerical Developments

Part V—Statutory Exemptions From Registration Requiring No HUD Determination

(a) **One Hundred Lot Exemption**

(b) Twelve Lot Exemption

(c) Scattered Site Exemption

(d) Twenty Acre Lots Exemption

(e) Single-Family Residence Exemption

(f) Mobil Home Exemption

(g) Intrastate Exemption

(h) Metropolitan Statistical Area (MSA) Exemption

Part VI—Regulatory Exemptions From Registration Requiring No HUD Determination

(a) General

(b) Eligibility Requirements

(1) Inexpensive Lots

(2) Five Year Lease

(3) Lot Sales to Developers

(4) Adjoining Lot

(5) Lot Sales to a Government

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

 (6) Sales of Leased Lots

Part VII—Regulatory Exemption. HUD Determination Required

Part VIII—Advisory Opinion

(a) General

(b) Requirements

Part IX—No Action Letter

Guidelines for Exemptions Available Under the **Interstate Land Sales Full Disclosure Act**

Authority: Public Law 90–448, 82 Stat. 476, 590; 15 U.S.C. 1701.

*Part I—Introduction*

The Office of Interstate Land Sales Registration (OILSR) of the U.S. Department of Housing and Urban Development, is offering these guidelines to clarify agency policies and positions with regard to the exemption provisions of the **Interstate Land Sales Full Disclosure Act** (the Act), Pub. L. 90–448 (15 U.S.C. 1701 et seq.), as amended, and implementing rules and regulations, 24 CFR Part 1710 et seq. The rules and regulations, are in compliance with the Paperwork Reduction Act of 1980 as evidenced by Office of Management and Budget approval number 2502–0243. These guidelines are intended to assist a developer in determining whether or not a real estate offering is exempt from any or all of the requirements of the Act. They supersede any guidelines previously issued by this Office.

This is an interpretive rule, not a substantive regulation. Not every conceivable factor of the exemption process is covered in these guidelines and variations may occur in unique situations. Examples are given, but the examples do not in any way exhaust the myriad possibilities occurring in land development and land sales activity, nor do they set absolute standards.

In order to understand the exemptions, the jurisdictional scope of the **Interstate Land Sales Full Disclosure Act** must be understood. Effective on June 21, 1980, the provisions of the Act which prohibit misrepresentations or practices which would result in defrauding purchasers generally apply to lot sales or lease programs of 25 or more lots offered pursuant to a common promotional plan where any means or instruments of transportation or communication in interstate commerce, or the mails, are used to sell or lease lots. Interstate use of the mails or advertising in media which has interstate circulation is sufficient to establish jurisdiction. Generally, if a real estate offering falls under the jurisdiction created by the Act, a developer of a subdivision containing 100 or more lots must register the subdivision. Registration includes filing a Statement of Record and supporting documention with HUD and providing prospective purchasers an effective Property Report containing important facts about the subdivision and the developer.

**\*44414** Real estate offerings which meet the eligibility requirements of an exemption are exempt from all or some of the Act's requirements unless the method of operation has been adopted for the purpose of evading the requirements of the law. The exemptions are available for subdivisions with particular characteristics, for certain individual lot sales transactions or for real estate meeting specific criteria. In addtion, the Act gives the Secretary of HUD authority to issue rules and regulations to exempt subdivisions or lots in a subdivision where, by reason of the small amount involved or the limited character of the offering, enforcement of the Act (i.e., full registration and disclosure) is not necessary in the public interest and for the protection of purchasers.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

As exceptions to the registration and full disclosure requirements of the Act, exemption requirements are strickly construed. The exemption requirements do not prescribe a method of operation or dictate how a subdivision should be developed. The exemptions are available if the real estate operation falls within their eligibility requirements. If the offering is subject to the Act and does not qualify for an exemption, it must be registered. The requirement of registration does not imply that the real estate value is questioned or the integrity of a business is suspect. The law simply provides that prospective purchasers have the right to adequate disclosure of facts about a subdivision so that an informed decision about the potential purchase can be made.

A developer is not required to submit any documentation or obtain a determination from HUD to operate under any exemption except the exemption provided under 24 CFR 1710.16 (Part VII of these guidelines). However, if there is any question whatsoever concerning whether or not a real estate offering qualifies for one of the statutory exemptions, developers are encouraged to seek legal counsel or obtain an Advisory Opinion from the Department before making any sales or leases. Experience has shown that developers are sometimes ill-advised as to the applicability of the Act to their offering and that such advice can result in violative sales and the disruption of business. The instructions and format for obtaining an Advisory Opinion are contained in § 1710.17 of the regulations and in Part VIII of these guidelines.

To fully understand the basis of eligibility for any of the exemptions, an understanding of frequently-used terms is essential.

*Part II—Definitions*

The following definitions are included here because of the importance each has to the explanation and understanding of HUD's interpretations of the exemption requirements. Furthermore, with the exception of "lot" and "sale", these definitions are not set forth elsewhere. The definitions of "lot" and "sale" are reported here due to their extraordinary importance to the exemptions.

(a) Anti-Fraud Provisions mean those provisions of the Act which prohibit the use of any sales practices, advertising or promotional materials which: would be misleading to purchasers; contain untrue statements; or would operate as a fraud or deceit upon a purchaser. Also prohibited are representations that roads, sewer, water, gas or electric services or recreational amenties will be provided or completed without so stipulating in the contract. The relevant provisions are set forth in section 1404(a)92) (15 U.S.C. 1703(a)(2)) of the Act. The regulations that implement the anti-fraud provisions are set forth in Part 1715, Subpart B.

(b) Common Promotional Plan means any plan undertaken by a single developer or a group of developers acting together to offer lots for sale or lease. A common promotional plan is presumed to exist if land is offered by a developer or a group of developers acting in concert and the land is contiguous or is known, designated, or advertised as a common development or by a common name. The number of lots covered by each individual offering has no bearing on whether or not there is a common promotional plan.

Other characteristics that are evaluated in determining whether or not a common promotional plan exists include, but are not necessarily limited to: A 10 percent or greater common ownership; same or similar name or identity; common sales agents; common sales facilities; common advertising; and common inventory. The presence of one or more of the characteristics does not necessarily denote a common promotional plan. Conversely, the absence of a characteristic does not demonstrate that there is no common promotional plan.

Two essential elements of a common promotional plan are a thread of common ownership or developers acting in concert. However, common ownership alone would not, in-and-of itself, constitute a common promotional plan. HUD considers the involvement of all principals holding a 10 percent or greater interest in the subdivision to deter-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

mine whether there is a thread of common ownership. If there is a thread of common ownership or if the developers are acting in concert, together with the use of common advertising or the same sales agent or the same sales office, a common promotional plan is presumed to exist. Experience has led to the conclusion that sales agents generally will direct a prospective purchaser to any or all properties in inventory in order to make a sale.

The phrase "common promotional plan" is most often misunderstood by those who believe that "promotion" implies an enthusiastic sales campaign. Any method used to attract potential purchasers is, in fact, the "promotional plan." For example, direct mail campaigns and free dinners may be the promotional plan of one developer while another developer's promotion may be limited to classified advertisements in a local newspaper.

(c) Delivery of Deed means the physical transfer of a recordable deed, executed by the seller, to the purchaser, to the purchaser's agent or to the appropriate governmental recording office. If the transfer (i.e., delivery) is to an agent or to a recording office, there must not be any conditions imposed upon the purchaser or any further action to be taken by either the purchaser or the seller. If delivery is to the place of recordation it must be accompanied by the proper recordation fees.

(d) Lot means any portion, piece, division, unit or undivided interest if such interest includes the right to the exclusive use of a specific portion of the land or unit.

This applies to the sale of a condominium or cooperative unit or a campsite as well as a traditional "lot."

If the purchaser of an undivided interest or a membership has exclusive repeated use or possession of a specific designated lot even for a portion of the year, a lot as defined by the regulations exists. For purposes of definition, if the purchaser has been assigned a specific lot on a recurring basis for a defined period of time and could eject another person during the time he has the right to use that lot, then the purchaser has an exclusive use.

(e) Sale means any obligation or agreement for consideration to purchase or lease a lot directly or indirectly. The time of sale is measured from when a purchaser signs a contract, even if the contract contains contingencies beyond the control of the seller. For example, if a developer uses a contract which states that the sale is contingent upon obtaining an exemption from HUD, a sale, for purposes of this definition, occurred when the purchaser signed the **44415** contract. The terms "sale" or "seller" include the terms "lease" or

(f) Subdivision means any land which is located in any State or in a foreign country and is divided or is proposed to be divided into lots, whether contiguous or not, for the purpose of sale or lease as part of a common promotional plan. Any number of lots, whether divided by the previous owner, divided by the current owner, or merely proposed to be divided, may constitute a subdivision. "Proposed to be divided" includes the developer's intention of subdividing land, as well as the developer's intention of adding additional land or units.

(g) Site means a group of contiguous lots whether such lots are actually divided or proposed to be divided. Lots are considered contiguous even though contiguity may be interrupted by a road, park, small body of water, recreational facility or any similar object.

*Part III—Exclusions From the Act*

The following items are deemed to be excluded from the coverage of the Act:

(a) A reservation is a non-binding agreement used to gauge market feasibility for a developer through which a potential purchaser expresses an interest to buy or lease a lot or unit at some time in the future.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

A reservation is excluded from the coverage of the Act.

A deposit may be accepted from the interested person provided that the money is placed in escrow with an independent institution having trust powers and is refundable in full at any time at the option of the potential purchaser. In all cases, a reservation cannot become a binding obligation to purchase a lot; the potential purchaser must take some subsequent action, typically the signing of a sales contract. An option agreement is an arrangement for consideration in which a potential purchaser could forfeit money and therefore could not be considered to be a reservation. In no event may a document purporting to be a Property Report or other evidence of compliance with the Act be delivered to an interested party when entering a reservation agreement for a lot or proposed condominium unit which is neither effectively registered nor exempt.

(b) The sale of undivided interests which do not carry with them the right of exclusive use of a specific lot does not establish jurisdiction. For example, a camping subdivision sold as 400 undivided interests to tenants in common, where purchasers have a co-extensive, non-exclusive right to the use and enjoyment of all campsites on a space available basis and no purchaser has an expressed or implied exclusive right to repeatedly use or occupy any specific campsite, would not constitute the sale of lots as defined by the Act.

*Part IV—Statutory Exemptions From the Title Requiring No Determination by HUD*

The discussions that immediately follow pertain to sections 1403(a) (1) through (8) of the Act, which correspond to 15 U.S.C. 1702(a)(1) throught (8). The exemptions are set forth in the regulations at 24 CFR 1701.5(a) through (h) and exempt sales from both the anti-fraud and the registration provisions of the Act.

(a) Twenty-five Lots.—(Section 1403(a)(1), 15 U.S.C. 1702(a)(10) and 24 CFR 1710.5(a)).

This section exempts the sale or lease of lots in a subdivision (i.e., lots offered pursuant to the same common promotional plan) that contains fewer than 25 lots. If a subdivision contains 25 or more lots, but fewer than 25 of those lots are offered for sale under a common promotional plan, those sales would be exempt. Thus in a subdivision of 28 lots in which 4 lots are not offered for sale because, for example, they are permanently dedicated to the public for a park, the sale of the remaining 24 lots is exempt.

If fewer than 25 lots are acquired in a larger subdivision, the offer of these lots may be subject to the Act if the acquiring party is in any way acting in concert with the previous or current developer of the balance of the subdivision. However, if fewer than 25 lots are acquired in a larger subdivision, the offer of the lots may be exempt if there is neither an identity of interest between the acquiring party and the previous or current developer nor any form of concerted action which constitutes a common promotional plan.

Since the "fewer than 25 lots" exemption is based upon the number of lots as opposed to the number of sales, resales of a lot will not be counted toward the "fewer than 25 lots" limit.

(b) Improved Lots.—(Section 1403(a)(2), 15 U.S.C. 1702(a)(2) and 24 CFR 1710.5(b)).

This section exempts: (1) The sale or lease of any improved land on which there is a residential, commercial, condominium, or industrial building; or (2) the sale or lease of land under a contract obligating the seller or lessor to erect such a building on the lot within a period of two years.

For a building or unit to be considered complete, it must be physically habitable and usable for the purpose for which it was purchased. A residential structure, for example, must be ready for occupancy and have all necessary and customary utilities extended to it before it can be considered complete. Mobile home lots with pads but no structure, even if improved with utilities and roads, will not qualify for this exemption. In addition, recreational vehicles

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

are not considered to be residential buildings.

If a seller (or developer) is relying on this exemption and the residential, commercial, condominium or industrial building is not complete, the contract must specifically obligate the seller to complete such a building within two years. If this contractual condition is not present, the sale is not exempt. The two-year period begins on the date the purchaser signs the sales contract. The use of a contract that obligates the buyer to build within two years would not exempt the sale.

HUD's interpretation of what constitutes a two-year obligation to construct a building relies, generally, on principles of applicable state contract law in deciding whether or not the seller has, in fact, an obligation to erect a building within two years. Provisions for purchaser financing, pre-sale requirements and remedies clauses are matters to be decided by the parties to the contract.

However, the contract must not allow nonperformance by the seller at the seller's discretion. Contracts which permit the seller to breach virtually at will are viewed as unenforceable because the construction obligation is not an obligation in reality; i.e., the contract is deprived of mutuality of obligation. Thus, for example, a clause that provides for a refund of the buyer's deposit if the seller is unable to close for any reason within the seller's control is not acceptable for use under this exemption. Similarly, contracts which directly or indirectly would result in a waiver of buyer's right to specific performance available under state law are treated as lacking a realistic obligation to construct. HUD's position is not that a right to specific performance of construction be expressed in the contract, but that any such right that purchasers have not be negated. For example, a contract that provides for a refund or a damage action as the buyer's sole remedy would not be acceptable.

Contract provisions which allow for nonperformance or for delays of construction completion dated beyond the two-year period are acceptable if such provisions are legally recognized **44416** as defenses to contract actions in the jurisdiction where the building is erected. Thus, for example, provisions to allow time extensions for events or occurrences such as acts of God, casualty losses or material shortages are generally permissible. Also permissible, in the case of the construction of multifamily condominiums, is a clause conditioning the completion of the sale or closing of title on a certain percentage of sales of other units for a period not to exceed 180 days from the date the first purchaser signs a contract in the project or, in a phased project, from the date the first purchaser signs a sales contract in a phase. However, such a clause may not extend the overall two-year obligation to construct.

Although the factual circumstances upon which nonperformance or a delay in performance is based may vary from transaction to transaction, as a general rule delay or nonperformance must be based on grounds cognizable in contract law such as impossibility or frustration and on events which are beyond the seller's reasonable control. In light of the above, the Department views the contractual focal point to be mutuality of obligation under state law.

Because of the variations in applicable contract law among the states and the many different provisions that are used by sellers in construction contracts, HUD staff may condition its advisory opinions under this exemption on representations by local counsel as to what constitutes mutuality of obligation under state law.

(c) Evidences of Indebtedness.—(Section 1403(a)(3), 15 U.S.C. 1702(a)(3) and 24 CFR 1710.5(c))

This section exempts the sale or lease of evidences of indebtedness (typically a note) secured by a mortgage or deed of trust on real estate. The sale of such notes,which is common in the industry, is exempt. However, the underlying sale of the land is not exempt under this provision.

(d) Securities.—(Section 1403(a)(4), 15 U.S.C. 1702(a)(4) and 24 CFR 1710.5(d))

This section exempts the sale of securities issued by a real estate investment trust.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

(e) Government Sales.—(Section 1703(a)(5), 15 U.S.C. 1702(a)(5) and 24 CFR 1710.5(e))

This section exempts the sale or lease of real estate by any government or government agency. This exemption extends to the sale or lease of land by a city, state, or foreign government as well as the sale of land by a city, state, or foreign government as well as the sale of land by the U.S. Government. However, it does not exempt sales or leases of lots by Federal or state chartered and regulated institutions such as banks or savings and loan associations, nor does the fact that the development is assisted, insured or guaranteed under a Federal or state program exempt the lot sales. Municipal Utility Districts and Special Improvement Districts may or may not be considered a qualified government agency under this exemption depending on the legal basis and operation of the District.

(f) Cemetery Lots.—(Section 1403(a)(6), 15 U.S.C. 1702(a)(6) and 24 CFR 1710.5(f))

This section exempts the sale or lease of cemetery lots.

(g) Sales to Builders.—(Section 1403(a)(7), 15 U.S.C. 1702(a)(7) and 24 CFR 1710.5(g))

This section exempts the sale or lease of lots to any person who acquires such lots for the purpose of engaging in the business of constructing residential, commercial, or industrial buildings or for the purpose of resale or lease of the lots to persons engaged in such a business. The term "business" is viewed as an activity of some continuity, regularity and permanency, or means of livelihood.

The sale or lease of lots to an individual who purchases the lots to have his or her own home built is not exempt under this provision. The sale to a non-broker who is buying a lot for investment with indefinite plans for resale is also not exempt.

(h) Industrial or Commercial Developments.—(Section 1403(a)(8), 15 U.S.C. 1702(a)(8) and 24 CFR 1710.10(h))

This section exempts the sale or lease of real estate which is zoned for industrial or commercial development. If there is no zoning ordinance, the exemption is available only if the real estate is restricted to industrial or commercial development by a declaration of covenants, conditions, and restrictions which have been recorded in the official records of the city or county in which the real estate is located. In addition, the following five conditions must exist in order to establish eligibility for this exemption:

(1) Local authorities have approved access from the real estate to a public street or highway. The approved access to a public street or highway must run to the legal boundary of the subdivision, but need not run to each and every lot;

(2) The purchaser or lessee of the real estate is a duly organized corporation, partnership, trust or business entity engaged in commercial or industrial business. To be considered "duly organized" a purchaser or lessee must have set up an administrative structure to conduct business, such as: Checking accounts; licenses and permits, if required; evidence of intent; and a set of accounting records. The phrase "engaged in business" implies an activity of some continuity, regularity and permanency, or means of livelihood. A new corporation or individual starting a business must be authorized to conduct such business in the jurisdiction in which the subdivision is located;

(3) The purchaser or lessee of the real estate must be represented in the transaction of sale or lease by a representative of its own selection. The term "representative" is not limited to attorneys and does not exclude sole proprietors from representing themselves. Any person can serve as the representative of the purchaser or lessee so long as sufficient evidence can be produced to prove authority to act in that capacity;

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

(4) The purchaser or lessee of the real estate must affirm in writing to the seller that it is either: Purchasing or leasing the real estate substantially for its own use; or it has a binding commitment to sell, lease or sublease the real estate to an entity which meets the requirements of (2) above; is engaged in commercial or industrial businesses; and is not affiliated with the seller or agent. These affirmations should be retained by the developer in accordance with the statute of limitations of the local jurisdiction or for a period of three years, whichever is longer. If the affirmation is included in the contract, a space must be provided for the purchaser to initial immediately following the affirmation clause; and

(5) A policy of title insurance or a title opinion must be issued in connection with the transaction showing that title to the real estate purchased or leased is vested in the seller or lessor, subject only to such exceptions as are approved in writing by the purchaser or lessee, preferably in a separate document, prior to the recordation of the instrument of conveyance or execution of the lease. The recordation of a lease is not required. Any purchaser or lessee may waive, in writing in a separate document, the requirement that a policy of title insurance or title opinion be issued in connection with the transaction.

***44417** Part V—Statutory Exemptions From Registration Requiring No HUD Determination*

The discussions that immediately follow pertain to sections 1403(b) (1) through (8) of the Act, which correspond to 15 U.S.C. 1702(b)(1) through (8) and 24 CFR 1710.6 through 1710.13.

The developer must comply with the Act's anti-fraud provisions (1404(a)(2), 15 U.S.C. 1703(a)(2)) for sales of lots in the subdivision that are exempt under these provisions but that do not qualify for exemptions under 1403(a) ( 15 U.S.C. 1702(a); 24 CFR 1710.5).

(a) **One Hundred Lot Exemption**.—(Section 1403(b)(1), 15 U.S.C. 1702(b)(1) and 24 CFR 1710.6)

This section exempts the sale of lots in a subdivision if: the subdivision contained fewer than 100 lots on April 28, 1969; has, since that date, contained fewer than 100 lots; and will, in the future, continue to contain fewer than 100 lots. The 100 lot count for purposes of the exemption excludes lots which are exempt from jurisdiction under 24 CFR 1710.5 (b) through (h).

For example, a developer of a subdivision containing a total of 129 lots since April 28, 1969, qualifies for this exemption if at least 30 lots are sold in transactions exempt because the lots had completed homes erected on them. The 30 exempt transactions may fall within any one exemption or a combination of exemptions noted in § 1710.5 (b) through (h) and may be either past or future sales. In the above example, the developer could also qualify if twelve lots had been sold with residential structures already erected on them, nine lots had been sold to building contractors and at least nine lots were reserved for either the construction of homes by the developer or for sales to building contractors. The reserved lots need not be specifically identified.

Developers of subdivisions containing more than 99 lots who wish to operate under this exemption must assure themselves that all lots in excess of 99 have been and will be sold in transactions exempt under § 1710.5 (b) through (h). The sale of more than 99 lots in transactions not exempt under § 1710.5 (b) through (h) would nullify this exemption for prior and future sales and may result in voidable prior sales at the purchaser's option.

It should be noted that the "25 lot" exemption under § 1710.5(a) cannot be used in connection with the " **100 lot**" **exemption**.

Since the " **100 lot**" **exemption** applies to the number of the lots as opposed to the number of sales, resales of a lot will not be counted toward the "100 lot" limit. However, the sale and resale of the lot must comply with the anti-fraud provisions.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

If fewer than 100 lots are acquired in a larger subdivision, the offer of these lots will not be exempt if the acquiring party is, in any way, acting in concert with the previous or current developer of the balance of the subdivision so as to create a common promotional plan for 100 or more lots unless the other lots qualify for exemption under § 1710.5. However, if fewer than 100 lots are acquired in a larger subdivision, the offer of the lots may be exempt if there is neither an identity of interest between the acquiring party and the previous or current developer nor a form of concerted action constituting a common promotional plan.

(b) Twelve Lot Exemption.—(Section 1403(b)(2), 15 U.S.C. 1702(b)(2) and 24 CFR 1710.7)

This section exempts the sale of lots from the registration requirements of the Act if, beginning with the first sale after June 20, 1980, no more than twelve lots in the subdivision are sold in the subsequent twelve-month period. Thereafter, the sale of the first twelve lots is exempt from the registration requirements if no more than twelve lots were sold in each previous twelve-month period which began with the anniversary date of the first sale after June 20, 1980. For example, if a developer's first lot sale after June 20, 1980 occurred on August 5, 1980 and no more than eleven additional lots in the subdivision were sold through August 4, 1981, the sales would be exempt.

During the second year of operation under this exemption (beginning on August 5, 1981 in the example) at least the first twelve lot sales would be exempt. However, if lot sales exceed twelve in the second or any subsequent year, the exemption would terminate on the sale of the thirteenth lot. Once eligibility has been terminated, the exemption is no longer available and cannot be recaptured by the same developer for the same subdivision even if there are fewer than twelve lots sold in subsequent years.

A developer may apply to the Secretary to establish a different twelve-month period for use in determining eligibility for the exemption, and the Secretary may allow the change if it is for good cause and consistent with the purpose of this section. An example would be to change the year to coincide with the developer's fiscal or tax year.

In determining eligibility for this exemption, all lots sold or leased in the subdivision after June 20, 1980 are counted, whether or not the lot is registered or the transaction is otherwise exempt, such as the sale of a home and lot package. This exemption extends to twelve lots, not twelve sales. Each lot would be counted in the sale or lease of multiple lots.

Since the "twelve lot" exemption applies to the number of lots as opposed to the number of sales, resales of a lot will not be counted toward the "twelve lot" limit. The sale and resale of a lot must qualify for the exemption and comply with the anti-fraud provisions. However, lot sales exempt under § 1710.5 (b) through (h), while counted toward the total of twelve, are not required to comply with the anti-fraud provisions.

(c) Scattered Site Exemption.—(Section 1403(b)(3), 15 U.S.C. 1702(b)(3) and 24 CFR 1710.8)

This section exempts from the registration requirements of the Act the sale of lots in a subdivision consisting of noncontiguous parts if: (1) Each noncontiguous part of the subdivision contains twenty or fewer lots; and (2) each purchaser or purchaser's spouse makes a personal, on-the-lot inspection of the lot purchased prior to signing a contract.

This exemption is intended to relieve the developers of small, scattered offerings of the requirement to register their subdivisions. The exemption may also apply to real estate brokers who have an ownership interest in more than one site, each containing 20 or fewer lots.

If a developer intends to rely on this exemption, it is important that the developer understand the definition of subdivision, how a common promotional plan is determined and what constitutes a site. These terms are defined in Part II

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

of these guidelines.

Lots which are contiguous when they are originally platted or developed are considered to remain contiguous. For purposes of this exemption, interruptions such as roads, parks, small bodies of water or recreational facilities do not serve to break the contiguity of parts of a subdivision.

(d) Twenty Acre Lots Exemption.—(Section 1403(b)(4), 15 U.S.C. 1702(b)(4) and 24 CFR 1710.9)

This section exempts the sale of lots in a subdivision from the registration requirements of the Act if, since April 28, 1969, each lot in the subdivision has contained at least twenty acres. In determining eligibility for the exemption, easements for ingress and egress or public utilities are considered part of the **\*44418** total acreage of the lot if the purchaser retains ownership of the property affected by the easement.

This exemption applies to the entire subdivision and requires that each and every lot in the subdivision be twenty acres or larger in order for the subdivision to qualify. If a single lot offered pursuant to the common promotional plan (i.e., subdivision) is less than twenty acres in size, no lot in the common promotional plan qualifies for exemption.

If a developer has two sites which comprise the subdivision and only one of the sites contains lots which are all greater than twenty acres in size, the offering of these lots would not be exempt under this provision. All lots offered pursuant to a common promotional plan must be considered.

A subdivision which is platted of record and contains a single lot which is less than twenty acres cannot qualify for the exemption even if the lots are offered in multiples which aggregate twenty acres or more. Further, if the platted lots are all twenty acres or more in size, but a lot is divided and a portion which is less than twenty acres, is offered for sale, the exemption would not be available to the subdivision.

(e) Single-Family Residence Exemption.—(Section 1403(b)(5), 15 U.S.C. 1702(b)(5) and 24 CFR 1710.10)

(1) General.—This Section provides an exemption for the sale of lots that are limited to single-family residential use. Developers are advised to carefully review the eligibility requirements listed below before proceeding with sales. Note especially that some of the eligibility requirements pertain to the entire subdivision while others apply to individual lots.

(2) Subdivision Requirements.—All lots offered under the same common promotional plan (i.e., subdivision) must comply with the two (2) eligibility requirements listed below in order for any lot to be eligible for this exemption.

(i) The subdivision must meet all all local codes and standards. If local codes expressly permit incremental development, then only the portions of the subdivision being offered at any given time are required to meet the codes and standards to satisfy this requirement of the exemption. Otherwise, the entire subdivision must qualify.

(ii) In the promotion of the subdivision there cannot be offers, by direct mail or telephone solicitation, of gifts, trips, dinners or the use of similar promotional techniques to induce prospective purchasers to visit the subdivision or to purchase a lot. There is no prohibition against using the mails or telephone to promote or advertise the offering or to respond to inquiries from potential purchasers. The only prohibition is that these meida cannot contain offers of gifts, trips, dinners or like inducements. Likewise, there is no prohibition (other than the above) for the use of the various other advertising media.

In order to qualify for this exemption, the subdivision must have complied with the requirements pertaining to ad-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

vertising and promotional methods since June 13, 1980, the date the exemption became effective.

(3) Lot Requirements.—Having met the eligibility requirements for a subdivision, each lot offered under the exemption must additionally comply with the eight (8) requirements listed below. Lots within a subdivision that do not comply with these additional requirements must either be registered or sold in compliance with another exemption, even though the two subdivision requirements are complied with.

(i) the lost must be located within a municipality or county where a unit of local government or the State specifies minimum standards for the development of subdivision lots taking place within its boundaries. The following is a list of standards which must be specified and adhered to:

(A) Lot dimensions.

(B) Plat approval and recordation.

(C) Roads and access.

(D) Drainage.

(E) Flooding.

(F) Water supply.

(G) Sewage disposal.

(ii) Each lot sold under the exemption must be either zoned for single-family residences or, in the absence of a zoning ordinance, limited exclusively by enforceable covenants or restrictions to single-family residences. Mobile homes, townhouses, and residences for one-to-four family use are considered single-family residences for purposes of this exemption provision. Recreational vehicles are not considered to be residential buildings. Mobile homes must be affixed to the real estate to be eligible, e.g., connected to water, sewer and electrical sources and on blocks with skirts.

The phrase " * * * in the absence of a zoning ordinance" is interpreted in its literal sense. The existence of a zoning ordinance other than single-family residence zoning is considered to be disqualifying even if there are covenants or restrictions limiting construction to single-family residences. Situations such as the foregoing would, however, be a candidate for a "substantial compliance" exemption (24 CFR 1710.16) if all other eligibility requirements of the exemption are complied with or substantially complied with. "Substantial compliance" is discussed in Part VII of these Guidelines.

(iii) The lot must be situated on a paved street or highway which has been built to standards prescribed by a unit of local government in which the subdivision is located and be acceptable to that local unit. If the street or highway is not complete, the developer must post a bond or other surety acceptable to the municipality or county in the full amount of the cost of completing the street or highway to assure completion to local standards. For purposes of this exemption, paved means concrete or pavement with a bituminous wearing surface that is impervious to water, protects, the base and is durable under the traffic load and maintenance contemplated.

(iv) The unit of local government or a homeowners' association must have accepted or be obligated to accept the responsibility for maintaining the street or highway upon which the lot is situated. The obligation of the local government entity to accept responsibility for maintaining the roads may be evidenced by an ordinance which binds the

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

government to maintain the streets or by a written statement signed by the appropriate government official. Maintenance independently provided by a developer is not acceptable under this exemption.

In any case in which a homeowners' association has accepted or is obligated to accept maintenance responsibility, the developer must, prior to a purchaser's signing a contract or agreement to purchase, provide the purchaser with a good faith written estimate of the cost of carrying out the responsibility over the first ten years of ownership. A "good faith estimate" means a current estimate based on documentary evidence, usually obtainable from the suppliers of the services.

(v) At the time of closing, potable water, sanitary sewage disposal, and electricity must be extended to the lot or the unit of local government must be obligated to install the facilities within 180 days following closing.

The obligation may be in the form of a local statute or written agreement signed by the appropriate government authority. A local code or statute which obligates the subdivider or developer to complete installation of water and sewage disposal systems within a certain time does not satisfy this requirement of the exemption.

**\*44419** For subdivisions that will not have a central water or sewage disposal system, there must be assurances that an adequate potable water supply is available year-round to service the subdivision and that each lot is approved for the installation of a septic tank at or prior to the time of sale.

Assurances of an adequate, drinkable water supply can be obtained from a hydrologist or the local health department. Approval for the installation of a septic tank must come from the appropriate government authority, usually the local health department, local governmental engineer or county sanitarian.

(vi) The contract of sale must require delivery of a warranty deed, which at the time of delivery is free from monetary liens and encumbrances, to the purchaser within 180 days after the signing of the sales contract. If a warranty deed is not commonly used in the jurisdiction where the lot is located, a deed or grant which warrants that the seller has not conveyed the lot to another person may be delivered in lieu of a warranty deed. The deed or grant used must also warrant that the lot is free from encumbrances made by the seller or any other person claiming by, through or under the seller.

(vii) At the time of closing, a current title insurance binder, policy or title opinion reflecting the condition of title must be in existence and issued or presented to the purchaser showing that, subject only to exceptions which are approved in writing by the purchaser at the time of closing, marketable title to the lot is vested in the seller. In order to satisfy this requirement, a developer may want to obtain the purchaser's written approval of exceptions to title prior to closing, although the actual title binder, policy or opinion must be current at the time of closing and show that title is vested in the seller. If closing occurs and the purchaser has not approved the exceptions to title in writing, the sale would not be exempt under this provision.

The party that bears the cost of the title binder, policy or opinion is not relevant to eligibility for the exemption.

Unless otherwise defined by state law, the "time of closing" is the date that legal title to the property is transferred from seller to buyer.

(viii) The purchaser or purchaser's spouse must make a personal, on-the-lot inspection of the lot purchased prior to signing a contract or agreement to purchase.

(f) Mobile home exemption.—(Section 1403(b)(6), 15 U.S.C. 1702(b)(6) and 24 CFR 1710.11)

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

This section exempts the sale of a mobile home lot from the registration requirements of the Act when all eligibility requirements listed below are met.

For purposes of this exemption, a mobile home is a unit receiving a label in conformance with HUD Regulations implementing the Manufactured Housing Construction and Safety Standards Act of 1974 (42 U.S.C. 5401, et seq.).

(1) The lot is sold as a homesite by one party and a mobile home is sold by another party and the individual contracts of sale:

(i) Obligate the sellers to perform, contingent upon the other seller carrying out its obligations, so that a completed mobile home will be placed or erected on a completed homesite within two years after the date the purchaser signed the contract to purchase the lot (see Part III(b) of these guidelines for HUD's position on two year completion requirements);

(ii) Provide that all funds received by the sellers are to be deposited in escrow accounts independent of the sellers until the transactions are completed;

(iii) Provide that funds received by the sellers will be released to the buyer upon demand if either of the sellers do not perform; and

(iv) Contain no provisions which restrict the purchaser's right to specific performance under the state law.

(2) The homesite is developed in conformance with all local codes and standards, if any, for mobile home subdivisions.

(3) At the time of closing:

(i) Potable water and sanitary sewage disposal are available to the homesite and electricity has been extended to the lot line;

(ii) The homesite is accessible by roads;

(iii) The purchaser receives marketable title to the lot; and

(iv) Other common facilities represented in any manner by the developer or agent to be provided are completed or, in the alternative, there are letters of credit, cash escrows or surety bonds in a form acceptable to the local government in an amount equal to 100 percent of the estimated cost of completion. Corporate bonds are not acceptable for purposes of the exemption.

(g) Intrastate Exemption.—(Section 1403(b)(7), 15 U.S.C. 1702(b)(7) and 24 CFR 1710.12)

This section provides an exemption for the sale or lease of real estate by a developer who is engaged in a sales operation which is intrastate in nature if the lot is free and clear of all liens, encumbrances and adverse claims. There are six (6) eligibility requirements which must be met before a lot qualifies for this exemption. These eligibility requirements follow:

(1) The sale of lots in the subdivision after December 20, 1979, must have been and continue to be restricted solely to residents of the state in which the subdivision is located unless the sale is exempt under 24 CFR 1710.5, 1710.11 or 1710.13. However, while the sale of lots exempt under the foregoing sections may be to out-of-state purchasers

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

without affecting the eligibility of other lots, the sale of registered or otherwise exempt lots in the same subdivision to non-residents would disqualify the subdivision for this exemption.

Residency is determined by state law. For purposes of this exemption a developer may rely on a statement signed by the purchaser or lessee as to the state of residence. Obviously, the prospective purchaser must be an actual resident of the state at the time of signing the sales contract as opposed to a person visiting the state or planning to move into the state. However, service personnel may at their option claim the state in which they are stationed.

(2) The purchaser or purchaser's spouse must make a personal on-the-lot inspection of the lot to be purchased before signing a contract. Evidence of this inspection should be retained by the developer.

(3) Each contract: (i) Specifies the developer's and purchaser's responsibilities for providing and maintaining roads, water and sewer facilities and any existing or promised amenities.

If the developer is not responsible for providing or completing a particular service or amenity, the contract should make it clear that it is up to the buyer to make the necessary arrangements for the desired services. If a third party is involved, the contract must specify whether the buyer or seller is responsible for making the required arrangements;

(ii) Contains a good faith estimate of the year in which the roads, water and sewer facilities and promised amenities will be completed.

This estimate is required for any facility the developer promises or **44420 indicates will be completed. Estimates should be based on documentary evidence, such as contracts, engineering schedules or other evidence of commitments to complete the facilities and amenities; and

(iii) Contains a non-waivable provision giving the purchaser the right to revoke the contract until at least midnight of the seventh calender day following the date the purchaser signed the contract. This revocation right cannot be restricted to a specific method of notification such as requiring notification to be in writing. If the purchaser is entitled to a longer revocation period by operation of state law, that period automatically becomes the Federal revocation period and the contract must contain the requirements of the longer period. If the purchaser revokes the contract during this "cooling-off period", he or she is entitled to a full refund of all money paid.

(4) The lot being sold must be free and clear of all liens, encumbrances and adverse claims. The fact that a title company will insure against a lien, encumbrance or adverse claim has no bearing in determining whether or not be sale qualifies for the exemption. Except as noted below, the existence of a lien, encumbrances or adverse claim disqualifies the affected lot or lots for this exemption. The only exceptions to this requirement are listed below.

(i) Mortgages or deeds of trust containing release provisions for the individual lot purchased if:

(A) The contract of sale obligates the developer to deliver a free and clear warranty deed or its equivalent under local law within 180 days (constructive delivery is acceptable); and

(B) The purchaser's payments are deposited in an escrow account independent of the developer until a deed is delivered. The escrow account must be with an institution which has trust powers or in an established bank, title insurance, abstract or escrow company, which is doing business in the jurisdiction in which the property is located. The purchaser's earnest money payment or any other payment by the purchaser cannot be used to obtain a release from the mortgage and may not be released from escrow until the deed is delivered.

(ii) Liens which are subordinate to the leasehold interest and do not affect the lessee's right to use or enjoy the lot.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

(iii) Property reservations which are for the purpose of bringing public services to the land being developed, such as easements for water and sewer lines.

Other acceptable property reservations are easements for roads and electric lines to serve the subdivision as well as certain drainage easements. The reservation of subsurface oil, gas or mineral rights is acceptable unless the reservation expressly or impliedly includes the right of ingress and egress upon the property. Examples of the types of reservations and easements which are unacceptable and disqualify the burdened property for the exemption include easements for high power transmission lines, telephone long lines, pipelines and bridle trails.

(iv) Taxes or assessments which constitute liens before they are due and payable if imposed by a State or other public body having authority to assess and tax property or by a property owners' association.

(v) Beneficial property restrictions which are mutually enforceable by all lot owners in the subdivision.

Developers who wish to maintain control of a subdivision indefinitely through a Property Owners' Association, Architectural Control Committee, and/or restrictive convenants will find the requirements of this exemption unsuitable.

In recognition of the fact that developer control is unavoidable until lots are sold, HUD has provided in the Proposed Rule that a developer must transfer control to all lot owners at or before that point-in-time when the developer no longer owns a majority of total lots in, or planned for, the subdivision, for the purposes of this exemption. Relinquishment of developer control must require affirmative action, usually in the form of an election based upon we vote per lot.

The developer may continue to participate in the control of the subdivision to the extent that lots remain unsold. For example, a developer who still owns thirty percent of the lot inventory has a thirty percent voting block on issues regarding the subdivisions.

HUD has found acceptable those instances where, during the initial stages of development, the developer appointed a governing body (panel, commission, etc.) and subsequently all lot owners elected and re-elected the same individuals to administer subdivision control.

To be enforceable, restrictions must be part of a general plan of development. Restrictions, whether separately recorded or incorporated into individual deeds, must be applied uniformly to every applicable lot or group of lots. To be considered beneficial and enforceable, any restriction or covenant that imposes an assessment on lot owners must apply to the developer on the same basis as other lot owners.

(vi) Reservations contained in United States land patents and similar Federal grants or reservations are excepted from the term "liens" but must be disclosed in the "Intrastate Exemption Statement."

Many of the land patents by which land west of the Mississippi River was originally conveyed contain reservations to the United States for minerals and water rights-of-way for canals and ditches. These reservations as well as any other Federal grants or reservations must be disclosed but are not disqualifying factors.

(5) Prior to the sale the developer discloses in a written statement (see sample below) to the purchaser all liens, reservations, taxes, assessments and restrictions applicable to the lot purchased. The developer must obtain a written receipt from the purchaser acknowledging that the statement required by this subparagraph was delivered.

Neither the statement nor the written receipt have to be submitted to HUD, but copies of the purchaser receipts and

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

should be available for review upon demand by the Secretary of HUD or designee. It is suggested that the developer retain the purchaser receipts for at least three years.

(6) The written statement (see sample below) also includes good faith cost estimates for providing electric, water, sewer, gas and telephone service to the lot. Estimates must include all costs associated with obtaining the services. For example, if private wells are the water source, the estimate should include the cost of the well, pump, casing, etc. Likewise, if butane or propane gas is used, the statement must include the cost of installing a tank and the per gallon cost.

The estimates for services applicable to unsold lots must be updated every two years or more frequently if the developer has reason to believe that at least a $100 increase or decrease for a particular item has occurred. The dates on which the estimates were made must be included in the statement.

Effective state property reports or disclosure statements containing all the information required in the "Intrastate Exemption Statement" may be used in lieu of a separate statement. State property reports which do not contain all the information required in the "Intrastate Exemption Statement" may be used only if they are supplemented with the missing information.

**\*44421** Sample Intrastate Exemption Statement

*Intrastate Exemption Statement*

Name of Developer———————————————

Address————————————————————————

Name of Subdivision————————————

Location—————————————————————

*Liens*

(Provide a clear and concise listing of all liens on the property . As used in this statement, liens are security interests such as mortgages or deeds of trust, tax liens, mechanics liens or judgments. Liens which are acceptable for purposes of the exemption are those which contain release provisions for the individual lot purchased but only if the contract of sale obligates the developer to deliver a deed within 180 days and the purchaser's payments are held in an independent escrow account until a deed is delivered and, in the case of leases, liens which are subordinate to the leasehold interest and do not affect the lessee's right to enjoy or use the lot.)

A chart similar to the following may be used:

```
------------------------------------------------------
 Type of lien    Amount of lien    Lots subject to lien
------------------------------------------------------
```
*Reservations*

(Disclose all easements and reservations affecting the lots which are offered for sale. The preceding narrative contains examples of easements and reservations which are acceptable.)

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

*Taxes*

(Provide sufficient information to enable a purchaser to estimate the annual taxes due on the lot purchased.)

*Assessments*

(Disclose all assessments, fees and dues which have been imposed or may be imposed. The list of assessments, fees and dues must show the rates and amounts and explain who has the authority for imposing the listed assessments, fees and dues.)

*Restrictions*

(Recite verbatim all restrictions that apply to the lots being offered. In the alternative, the developer may attach a complete copy of all restrictions affecting the lots. If the restrictions do not apply to all the lots in the offering, the developer should specify which lots are affected by the restrictions. In addition, the developer should explain who has the authority to enforce the restrictions and indicate whether or not the restrictions are recorded.)

*Utility Cost Estimates*

(Disclose a good faith estimate of the cost to the purchaser of providing water, electric, telephone, sewage disposal and gas service to each lot offered under the exemption. The estimate must include all costs associated with obtaining the services.)

A chart similar to the following may be used.

```
--------------------------------------------------------------------------
    Lot No.      Water    Electric    Telephone  Sewage      Gas
disposal
--------------------------------------------------------------------------
 (Under each heading
list the estimated
    cost to the
purchaser and the
date the estimate
    was made.)
--------------------------------------------------------------------------
```

I affirm that to the best of my knowledge the above information is accurate and complete.

(Signature of Developer or Authorized Agent)

(Date)——————

(Title)—————

*Purchaser's Acknowledgment*

(The developer must obtain a written receipt from the purchaser acknowledging that the purchaser received a written statement(s) of all liens, reservations, taxes, assessments and restrictions applicable to the lot and good faith estimates of the cost of providing electric, water, sewer, gas and telephone service to the lot.)

The receipt may be in the following form:

Sample Receipt

I acknowledge that I have received an Intrastate Exemption Statement listing all liens, reservations, taxes, assessments, restrictions and estimates of utility costs applicable to (identify the subdivision and its location) from (name of developer). I have made a personal on-the-lot inspection of (identify the lot) which is the lot I am interested in buying or leasing.

(Signature of Purchaser)——————

(Date)————————————————————————

(h) Metropolitan Statistical Area (MSA) Exemption.—(Section 1403(b)(8), 15 U.S.C. 1702(b)(8) and 24 CFR 1710.13)

This section provides an exemption for the sale or lease of lots in a subdivision located in a Metropolitan Statistical Area (MSA). The eligibility criteria for the MSA Exemption is the same as that of the Intrastate Exemption with the following exceptions:

(1) The subdivision must have contained fewer than 300 lots on and since April 28, 1969 and continue at or below that quantity in the future;

(2) The lot(s) must be located in a MSA as defined and designated by the U.S. Office of Management and Budget;

(3) The principal residence of each purchaser must be within the same MSA;

(4) Adverse claims which are disqualifying for the Intrastate Exemption are acceptable for the MSA Exemption. The only requirement in this regard is for the adverse claim to be disclosed in the MSA Exemption Statement. The party making the claim, the basis of the claim and the property affected by the claim must be identified; and

(5) Although the MSA exemption is self-determining, a written affirmation must be submitted by developers relying on this exemption. The due date is January 31 of each year. Failure to submit the affirmations will disqualify the subdivision for this exemption.

The written affirmation must be in the following format:

Affirmation

Developer's Name——————

Developer's Address———

Purchaser's Name(s)———

Purchaser's Address(es) (including county)——————

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Name of Subdivision————————

Legal Description of Lot(s) Purchased——————

I hereby affirm that all of the requirements of the MSA exemption as set forth in 15 U.S.C. 1702(b)(8) and 24 CFR 1710.13 have been met in the sale or lease of the lot(s).

I also affirm that I submit to the jurisdiction of the **Interstate Land Sales Full Disclosure Act** with regard to the sale or lease cited above.

(Date)——————

(Signature of Developer or Authorized Agent)——————

(Title)——————

The sample Intrastate Exemption Statement shown above may be used as a guide in preparing the MSA Exemption Statement. Simply substitute references to the MSA Exemption in lieu of references to the Intrastate Exemption and add a provision for disclosure of Adverse Claims after the discussion of Restrictions and before the caption Utility Cost Estimates.

*Part VI—Regulatory Exemptions From Registration Requiring No HUD Determination—(24 CFR 1710.14)*

(a) General. The Secretary of HUD has established several regulatory exemptions from the registration and full disclosure requirements of the Act (i.e., filing a Statement of Record and furnishing a Property Report). These exemptions are self-determining and do not require a submission to HUD.

In order for a developer to qualify, the eligibility criteria must be complied with at all times. At the point-in-time when a developer fails to comply with the eligibility criteria, the exempt status immediately ends. Furthermore, if there are reasonable grounds to believe that exemption under 24 CFR 1710.14 in a particular case is not in the public interest, the Secretary may then deny further eligibility of an otherwise eligible subdivision, site or lot for the exemption after notice and an opportunity for hearing. Proceedings under this provision will follow the requirements set forth in the regulations (24 CFR 1720.105, et seq.) and be patterned after **\*44422** the notice and time requirements of a proceeding pursuant to 24 CFR 1710.45(b)(1).

If a sale meets any one of the following requirements, it qualifies for exemption from the registration and full disclosure requirements of the Act. However, qualifying sales must comply with the anti-fraud provisions.

(b) Eligibility Requirements.—(1) Inexpensive Lots (24 CFR 1710.14(a)(1)). The sale or lease of a lot for less than $100, including closing costs, is exempt if the purchaser or lessee is not required to purchase or lease more than one lot. This exemption is available on a lot-by-lot basis. The entire subdivision need not qualify.

(2) Leases for Limited Duration (24 CFR 1710.14(a)(2)). The lease of a lot for a term of five years or less is exempt if the terms of the lease do not obligate the lessee to renew. This exemption is available on a lot-by-lot basis. The entire subdivision need not qualify.

The use of an arrangement which is called a lease but is tantamount to the sale or long-term lease of a lot would not qualify for this exemption; i.e., a lease with a large initial payment or substantial payments over five years and token payments thereafter.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

A five-year lease with an option to purchase or renew would be suspect for eligibility under this exemption and may or may not qualify depending on the overall transaction. In these cases a request for an Advisory Opinion is strongly recommended.

(3) Lots Sold to Developers (24 CFR 1710.14(a)(3)). The sale or lease of lots to a person who is engaged in a bona fide land sales business is exempt. For a transaction to qualify for this exemption, the purchaser must be a person who plans to subsequently sell or lease the lot(s) in the normal course of business. The term "business" refers to an activity of some continuity, regularity and permanency, or means of livelihood. The sale or lease of lots to an individual who is buying the property for investment to be sold at some unforeseeable time in the future would not be exempt under this provision. This exemption is available on a lot-by-lot basis, although most transactions would presumably include more than one lot. The entire subdivision need not qualify.

(4) Adjoining Lot (24 CFR 1710.14(a)(4)). The sale or lease of a lot to a purchaser who owns the contiguous lot which has a residential, commercial, or industrial building on it is exempt. This exemption permits a developer to sell or lease unimproved lots to persons wishing to enlarge the property on which their home or business is located. This exemption is available on a lot-by-lot basis.

(5) Lot Sales to a Government (24 CFR 1710.14(a)(5)). The sale or lease of real estate to a government or government agency is exempt. This exemption is available on a lot-by-lot basis. The entire subdivision need not qualify.

(6) Sales of Leased Lots (24 CFR 1710.14(a)(6)). The sale of a lot or lots which the purchaser has leased and on which the purchaser has maintained his or her primary residence for at least one year is exempt. Typically, these sales will occur in a mobile home subdivision. This exemption is available on a lot-by-lot basis. The entire subdivision need not qualify.

(c) Termination.—If HUD has reasonable grounds to believe that exemption from registration in a particular case is not in the public interest, HUD may terminate the exemption as to a subdivision or to particular lots in a subdivision. Termination could be ordered only after the developer is notified of HUD's intention to terminate and is afforded a hearing opportunity. The basis for termination will vary from case-to-case but would indicate situations involving unlawful sales practices by the developer or its agents, insolvency or adverse information about the lots or the subdivision that should be disclosed to purchasers.

*Part VII—Regulatory Exemption—HUD Determination Required*—(24 CFR 1! 710.16)

An Exemption Order is available for a subdivision or certain lots in a subdivision which technically do not comply with the eligibility requirements of one of the other available exemptions. However, to qualify for an Exemption Order the offering must substantially comply with the eligibility requirements.

In evaluating the circumstances of an Exemption Order request, HUD examines the basic intent or rationale and legislative history of the exemption which the developer claims to substantially meet. If the offering is not consistent with the basic intent or rationale, an Exemption Order will not be issued even though some of the technical requirements of that exemption are met.

Offerings that involve circumstances which are equal to or better than the technical requirements or which are consistent with the basic intent of the exemption will be judged to be in substantial compliance and an Exemption Order will be issued. It should be noted that an Exemption Order applies only to sales after the date of the Order and has no retroactive effect.

This is the only exemption which requires submission of a request and a determination by HUD before it is effec-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

tive. Developers wishing to request an Exemption Order must submit the information listed below.

(a) A detailed statement describing how the proposed sales of lots meets or substantially meets each of the eligibility requirements of the exemption which the developer claims to substantially meet.

(b) A copy of the contract to be used. The contract must:

(1) Specify the developer's and purchaser's responsibilities for providing and maintaining roads, water and sewer facilities and any existing or promised amenities. If the developer is not responsible for providing or completing a particular service, the contract should make it clear that it is up to the buyer to make the necessary arrangements for desired services;

(2) Contain a good faith estimate of the year in which the roads, water and sewer facilities and promised amenities will be completed;

(3) Contain a non-waivable provision giving the purchaser the opportunity to revoke the contract until at least midnight of the seventh calendar day following the date the purchaser signed the contract. If the purchaser is entitled to a longer revocation period by operation of state law, that period becomes the Federal revocation period and the contract must reflect the requirements of the longer period; and

(4) Contain a provision which obligates the developer to deliver a warranty deed, or its equivalent under local law, which at the time of delivery is free from any monetary liens or encumbrances, to the purchaser within 180 days of the date the purchaser signed the sales contract.

(c) A plat of the entire subdivision with the lots subject to the exemption delineated.

(d) A description of how the lots have been and will be promoted and to which population centers the promotion has been and will be directed.

(e) Documentation to establish that each purchaser or purchaser's spouse will make an on-the-lot inspection of the lot to be purchased before the contract is signed.

(f) A filing fee of $250 in the form of a certified check, cashier's check or postal money order made payable to the U.S. Treasury.

If, after an Exemption Order has been issued, HUD has reasonable grounds to believe that the exempt status of the **44423** subdivision or individual lots is not in the public interest, the Exemption Order may be terminated. Such an action would be preceded by a notice giving the developer an opportunity to request a hearing on the allegations leading to termination. For example, proceedings may be initiated due to the apparent omissions or misrepresentations in the information upon which the Exemption Order was based, the unethical conduct of the developer or the developer's agent or the presence of adverse conditions at or about the real estate which should be brought to the attention of purchasers by way of a disclosure document.

Some examples of substantial compliance are listed below. These are examples only and presume that all other applicable eligibility requirements of the exemption are either fully met or substantially met. It should be remembered that substantial compliance can occur with virtually any of the twenty-two available exemptions.

(1) One of the eligibility requirements for the Single-Family Residence Exemption is that the lots be zoned single-family residential or, in the absence of a zoning ordinance, restricted to single-family residence development by en-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

forceable covenants or restrictions. As stated before, the phrase "* * * in the absence of a zoning ordinance * * *" is interpreted in its most literal sense. Therefore, the existence of any zoning ordinance other than single-family residence zoning is a disqualifying factor for the exemption.

However, substantial compliance would be considered if a different zoning ordinance existed, e.g., agricultural, and the enforceable covenants or restrictions limited development to single-family residences. On the other hand, the existence of other types of zoning, e.g., industrial, could not be considered substantially equivalent to single-family zoning and an Exemption Order would generally not be issued even if the enforceable covenants or restrictions limited development to single-family residences.

In the first example—agricultural—it is felt that the "intent test" would be met since farming in the immediate surrounding area would not necessarily be adverse to single-family residences. In the second example—industrial—the "intent test" would not be met since the permissible existence of factories in the immediate surrounding area would not be conducive to single-family residences.

(2) Another eligibility requirement for the Single-Family Residence Exemption states that, at the time of closing, potable water, sanitary sewage disposal and electricity must be extended to each lot or the unit of local government must be obligated to install these facilities within 180 days following closing.

Substantial compliance with this provision would be considered in those cases where one or more of these utilities is not available but the developer has a contract with a publicly regulated utility to install the facilities within 180 days follwing closing or upon demand of the purchaser.

Furthermore, substantial compliance would be considered if the utility trunk lines are "reasonably close" to the lots instead of at each lot line. "Reasonably close" has been defined by HUD to mean being near enough that the cost to fully extend the line to the lot(s) would not exceed $300 plus normal hook-on fees.

(3) An eligibility requirement for the Intrastate Exemption is that the lot sold must be free and clear of all liens, encumbrances and adverse claims. Mineral reservations have been deemed to be acceptable so long as the reservation does not include the right of ingress or egress upon the property.

If the right of ingress or egress exists, substantial compliance will be considered if there are written provisions from the owner(s) of the mineral rights for compensating the lot owner for loss of the use or enjoyment of the property when such rights are exercised.

*Part VIII—Advisory Opinion—Secretary's Opinion May Be Requested—(24 CFR 1710.17)*

(a) General. When it is not clear that an offering is either exempt under the self-determined statutory or regulatory provisions or whether jurisdiction exists, an Advisory Opinion may be requested to clarify the situation. The filing requirements are found in 24 CFR 1710.17 of the regulations and are described in (b) and (c) below.

The material to be submitted with all requests for Advisory Opinions is described under (b) below. In most cases, depending on the provision under which an exemption is claimed, additional documentation is needed before an opinion can be given. Review (c) below to determine what additional documentation is customarily needed before submitting a request.

HUD's Advisory Opinions are based upon and limited to the representations made by the developer. Therefore, if a favorable Advisory Opinion is issued based upon incomplete, improper or incorrect representations, the Opinion has no binding effect.

(b) Basic Requirements For Submission. (1) A $250.00 filing fee in form of a certified check, cashier's check or postal money order made payable to the U.S. Treasury.

(2) A comprehensive description of the conditions and operations of the offering. Specify the provision(s) of the Act or regulations under which sales are believed to be exempt or why there is not jurisdiction.

(c) Additional Requirements For Submission. Depending on the provision under which an exemption is claimed, a developer may be required to submit additional information. Beginning with the exemption under 24 CFR 1710.5(a) of the regulations and ending with 24 CFR 1710.14, the additional information that should be submitted with a request for an Advisory Opinion is listed below. In some cases, information or documentation other than that specified may be requested after a submission has been reviewed by HUD.

(1) To obtain an Advisory Opinion pertaining to 24 CFR 1710.5(a), submit a plat of the subdivision. Submit a listing of any other properties in which the developer has an interest and the geographic relationship of those properties to the subdivision for which the exemption is claimed. If other properties are divided or proposed to be divided, indicate the total number of lots planned. Indicate those properties which will be offered by the same sales personnel or through the same sales office as the subdivision for which the exemption is claimed. Describe how the lots are marketed, i.e., who sells the lots, how the lots are advertised, whether prospective purchasers are referred between subdivisions, etc.

(2) To obtain an Advisory Opinion pertaining to 24 CFR 1710.5(b), submit a copy of the contract of sale or lease.

(3) To obtain an Advisory Opinion pertaining to 24 CFR 1710.5(c), describe the security arrangement and submit a copy of the evidence of indebtedness.

(4) To obtain an Advisory Opinion pertaining to 24 CFR 1710.5(d), no additional documentation is customarily required to be submitted with the request.

(5) To obtain an Advisory Opinion pertaining to 24 CFR 1710.5(e), specify the Government agency selling the property and submit the enabling legislation.

(6) To obtain an Advisory Opinion pertaining to 24 CFR 1710.5(f), no additional documentation is customarily required to be submitted with the request.

(7) To obtain an Advisory Opinion pertaining to 24 CFR 1710.5(g), specify the assurances that the purchaser or lessee is engaged in the business of building or is acquiring the real estate for resale or lease to a builder.

(8) To obtain an Advisory Opinion *44424 pertaining to 24 CFR 1710.5(h), submit a plat and supporting documentation, including a copy of the instrument containing the purchaser or lessee affirmation and evidence of the zoning or, in the absence of zoning, restrictive covenants.

(9) To obtain an Advisory Opinion pertaining to 24 CFR 1710.6, submit a plat of the subdivision. In addition, submit a listing of any other properties in which the developer has an interest and the geographic relationship of those properties to the subdivision for which the exemption is claimed. If other properties are divided or proposed to be divided, indicate the total number of lots planned. Indicate those properties which will be offered by the same sales personnel or through the same sales office as the subdivision for which the exemption is claimed. Describe how the lots are marketed, i.e., who sells the lots, how the lots are advertised, whether prospective purchasers are referred between subdivisions, etc.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

(10) To obtain an Advisory Opinion pertaining to 24 CFR 1710.7, submit a list of all lots sold under the same common promotional plan since June 20, 1980. (Review Part II(b) of these Guidelines for an explanation of common promotional plan.) Indicate the date of each sale. State whether the developer has been involved in the sale of any other real estate since June 20, 1980 and indicate how it is intended that future sales will be restricted.

(11) To obtain an Advisory Opinion pertaining to 24 CFR 1710.8, submit a plat of the site and list the name and geographic location of all other properties in which the developer has an interest. State the extent of the developer's interest.

(12) To obtain an Advisory Opinion pertaining to 24 CFR 1710.9, submit a plat of the subdivision with the acreage of each lot clearly delineated. In addition, substantiate that all lots offered under the same common promotional plan are greater than 20 acres in size and have been that size since April 29, 1969. Therefore, describe all properties in which the developer has an interest and the geographic relationship of such properties to the subdivision for which the exemption is claimed. Indicate those properties which will be offered by the same sales personnel or through the same sales office as the subdivision for which the exemption is claimed. Describe how the properties are marketed, i.e., who sells the lots, how the lots are advertised, whether purchasers are referred between subdivisions, etc.

(13) To obtain an Advisory Opinion pertaining to 24 CFR 1710.10, address each of the subdivision requirements and the eight lot requirements as set forth in Part IV(e) of these Guidelines. Include a copy of the contract of sale and a copy of the state or local minimum standards. Describe the marketing and promotion of the subdivision.

(14) To obtain an Advisory Opinion pertaining to 24 CFR 1710.11, identify who is selling the lot and who is selling the mobile home. Submit a copy of the contracts to be used.

(15) To obtain an Advisory Opinion pertaining to 24 CFR 1710.12, submit a copy of the contract of sale, the Intrastate Exemption Statement, the restrictive covenants, a statement of the status of mineral right ownership and the enabling document(s) of the Property Owners' Association, if any. If sales have been made since December 20, 1979, submit a list of such sales with the purchaser's name, address at the time of sale, date of sale and lot number(s).

(16) To obtain an Advisory Opinion pertaining to 24 CFR 1710.13, submit a copy of the contract of sale, plat, and MSA Exemption Statement. If sales have been made, submit a list of such sales with the purchaser's name, address at the time of sale, date of sale and lot number(s).

(17) To obtain an Advisory Opinion pertaining to 24 CFR 1710.14(a)(1), submit a copy of the proposed promotional materials and the documents to be used in the sale.

(18) To obtain an Advisory Opinion pertaining to 24 CFR 1710.14(a)(2), submit a copy of the lease and other documentation relevant to the lease transaction.

(19) To obtain an Advisory Opinion pertaining to 24 CFR 1710.14(a)(3), submit information to substantiate the claim that the purchaser is in the land sales business.

(20) To obtain an Advisory Opinion pertaining to 24 CFR 1710.14(a)(4), submit a map showing the lot on which the purchaser owns a residential, commercial or industrial building and the lot to be purchased.

(21) To obtain an Advisory Opinion pertaining to 24 CFR 1710.14(a)(5), name the Government entity and submit a copy of the legal document by which the entity was created.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

48 FR 44412-01, 1983 WL 113457 (F.R.)                                                    Page 27

(22) To obtain an Advisory Opinion pertaining to 24 CFR 1710.14(a)(6), state the circumstances under which the purchaser has lived on or will have lived on the lot for one year or more and submit a copy of the lease or other agreement entitling the other agreement entitling the purchaser to occupy the lot. State whether the purchaser is using the lot as his or her primary residence.

*Part IX—No Action Letter—(24 CFR 1710.18)*

The availability of expanded exemptions under the regulations has resulted in the exemption of most transactions which may previously have warranted the issuance of a No-Action Letter. Nevertheless, there may be instances when one or more sales or leases fall within the purview of the Act but do not qualify for an exemption although the circumstances of the sales or leases may be such that no affirmative action is needed to protect the public interest and prospective purchasers.

In such instances, a No-Action Letter may be requested. The request should include a thorough explanation of the proposed transaction(s) and the facts and supporting documentation necessary to demonstrate that no affirmative action is needed in the particular situation. If a request for a No-Action Letter is based upon a belief that the offering is ineligible for an exemption due to a minor technicality, demonstrate how other provisions of the particular exemption are met.

The issuand of a No-Action Letter will not affect any right or remedy that the purchaser may have under the Act, including the right to rescind a contract for a period of two years. A No-Action Letter simply signifies that HUD will not take any affirmative action to enforce the Act or require registration. However, the issuance of a No-Action Letter does not preclude any future agency action which may become necessary because of new information or a change in the circumstances.

HUD's No-Action Letters are based upon and limited to representations made by the developer. Therefore, if a favorable No-Action Letter is issued based upon incomplete, improper or incorrect representations, the Letter has no binding effect.

In no event will a No-Action Letter be issued if the sale or lease has already occurred.

There is no prescribed format for requesting a No-Action Letter. Therefore, the developer should describe the circumstances as fully as possible following a rule-of-thumb that too much information is better than too little. Upon review of the information submitted, additional clarification may be required to permit a final determination.

* * * * *

(Public Law 90–448, 82 Stat. 476, 590; 15 U.S.C. 1701)

Dated: September 7, 1983.

Philip Abrams,

Assistant Secretary for Housing—Federal Housing Commissioner.

[FR Doc. 83–26345 Filed 9–27–83; 8:45 am]

BILLING CODE 4210–27–M

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

48 FR 44412-01, 1983 WL 113457 (F.R.)                                      Page 28

48 FR 44412-01, 1983 WL 113457 (F.R.)
END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.